IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JORGE LUIS OTERO-RIVERA**,

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 18-1884 (BJM)

## OPINION AND ORDER

Jorge Luis Otero-Rivera ("Otero") seeks review of the Commissioner's finding that he is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Otero contends the Commissioner's decision should be reversed because the administrative law judge ("ALJ")'s residual functional capacity ("RFC") finding and step five non-disability determination were not supported by substantial evidence. Dkt Nos. 1, 12. The Commissioner opposed. Dkt Nos. 9, 16. This case is before me on consent of the parties. Dkt Nos. 6-7. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the

claimant from doing the work he has performed in the past. An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the treatment record, non-examining consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript.

Otero was born on October 21, 1975, graduated high school and approved a graphic arts vocational course, does not speak English (but speaks Spanish), and worked as a small business owner (dispatch and delivery of bottled water). Social Security Transcript ("Tr.") 20, 41, 49, 344. He ceased operations of his business on December 4, 2012, notifying the Municipality of San Juan that "[f]or health reason I am no longer able to work." Tr. 109, 344.

On April 17, 2013, Otero applied for disability insurance benefits, claiming to have been disabled since December 19, 2012 (alleged onset date) at 37 years of age[1] due to epilepsy, lumbar

---

[1] Otero was considered to be a younger individual (Tr. 20), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

degenerative disc disease, and obesity. Tr. 14, 16, 288-291, 344. He last met the insured status requirements on December 31, 2017 (date last insured). Tr. 14, 16. The claim was denied initially on September 17, 2013 (Tr. 63, 210) and on reconsideration on February 20, 2014. Tr. 67, 215. A hearing before an ALJ was held on June 10, 2016. Tr. 34. On August 1, 2016,[2] the ALJ found at step five that Otero was not disabled as defined in the Act. Tr. 8-25. Otero requested review of the ALJ's decision, and claims to have submitted additional evidence. Tr. 5. However, the Appeals Council denied his request on September 20, 2018, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. The present complaint followed. Dkt. No. 1.

**Treating physicians**

*Ashford Presbyterian Community Hospital*

On December 19, 2012, Otero went for treatment at the Ashford Presbyterian Community Hospital for a seizure episode he suffered that day. Tr. 127-167, 376-416. Otero had not taken his medication for epilepsy, Phenobarbital, for a whole week prior to the attack. When he had his seizure, he fell backwards and hit his lower back with the shower border, presenting tenderness in that area. An acute compression fracture involving the L1 vertebral body was found, with no neurological damage. A back surgeon was consulted and bed rest, pain killers, and pain management, but no surgery, were recommended. He was given seizure medication, and instructed to continue on Phenobarbital. Tr. 132-135, 145, 426.

An MRI of the lumbar spine, dated June 26, 2013, showed a chronic anterior wedge compression fracture at L1, no canal stenosis, and mild degenerative disc disease at L2-L3 and L5-S1. Tr. 425.

*Dr Harry R. Alverio-Rodríguez*

Dr. Alverio treated Otero's back condition with physical therapy for his fracture of vertebra L1, herniated discs, and osteopenia, from January to May 2013. Otero had normal sensation, full muscle strength, and normal reflexes. Tr. 347, 417-422. Dr. Alverio assessed that Otero suffered from degeneration of the lumbar or lumbosacral intervertebral disc and lumbago. Otero was advised to avoid carrying heavy objects, and was prescribed Naproxen, Codein, and Percocet. Tr. 418, 420.

---

[2] The "Court Transcript Index" indicates the decision is dated July 27, 2016.

### *Dr. Tomás Hernández-Ortiz*

From 1989 to 2014, Dr. Hernández (neurologist) treated Otero for epilepsy with medications. Tr. 179-185, 451-457. The record shows three instances of episodes (1989, 2008, 2012). Tr. 181, 185, 349. Dr. Hernández prepared a neurological report dated August 6, 2013, in which he stated that Otero measured 5'10" and weighed 210 pounds, had full strength in his extremities, full hand function, no muscle atrophy, no motor or sensorial abnormality, normal reflexes. However, Otero had a rigid spine, an abnormal gait, and an inability to walk on heels and toes. Dr. Hernández assessed that Otero could lift and carry up to 15 pounds; sit, stand, and walk for 30 minutes at a time; and needed assistance to perform activities of daily living. Tr. 437-445.

### *Dr. Iván Cerezo de la Rosa*

Dr. Cerezo (family and geriatric medicine) treated Otero with medication for epilepsy (Phenobarbital) and high blood pressure (Micardis and Cozaar) from 2008 to 2013. Visits appear to be once a year, for medication refills. In 2008, Otero appeared to have chest and knee pain. This record contains one progress note per year (except for 2009). Notes are mostly illegible.  Tr. 169-178, 348, 427-436.

**Procedural History**

On April 17, 2013, Otero applied for disability insurance benefits, claiming to have been disabled since December 19, 2012 (alleged onset date) at 37 years of age due to osteopenia, epilepsy, high blood pressure, and herniated discs. Tr. 14, 187, 288-291. Otero suffered from epilepsy since February 17, 1989. His last attack was on December 19, 2012.  He would lose control of his body for about 10 to 15 minutes, but controlled the condition with medication (Phenobarbital). Tr. 125-126, 360-361. Because of that epileptic attack in 2012, Otero, who measured 5'8" and weighed 200 pounds (Tr. 343), suffered a fall that affected his back and hip. Tr. 117. Otero claimed that his conditions affected his ability to stand up, bend over, double over, stand, reach, walk, sit down, kneel, climb stairs, and finish assignments. He could not lift or carry heavy things. Squatting and bending caused discomfort and pain. Climbing stairs caused him great pain. He could not walk long distances and had to use a cane. He could walk 5 to 10 minutes before having to stop and rest, and needed to rest about 10 minutes. Tr. 122, 124.

Otero reported that, as to activities of daily living, his morning routine included taking care of his hygiene, having coffee, and taking his medications. His wife assisted him at times to soap up his legs because he could not bend over. He would lean against the sink to shave and brush his

teeth. To dress himself, he would lean against the wall to put his pants on, and sit down to tie his shoes. During the day, Otero watched television, napped, and sometimes went to medical appointments, the pharmacy, church, the supermarket, and his father-in-law's house. At supermarkets, he used an electric cart. He could drive but had difficulty getting out of the car. At night, Otero used a cane to walk, and had difficulty sleeping because he felt intense pain on the left side of his hip and would wake up several times during the night to shift positions. Before his conditions, he could also do maintenance on his car, exercise, play with his kids, and do household chores. Now, he could not go to the movies because he could not sit for long, and could no longer play sports. Tr. 117-124, 352-359.

The case was referred for a record evaluation to Dr. Brenda Concepción, who reviewed the medical evidence and assessed on September 16, 2013 that Otero had severe medically determinable impairments (spine disorder and epilepsy) but did not meet or equal a listing (Listing 1.04 Spine Disorders was considered). Dr. Concepción assessed that Otero's statement of low back pain was reasonable and supported by the medical evidence, but the degree of limitation was out of proportion to the objective physical findings. In her opinion, the cane was not essential. Her RFC assessment was that Otero retained the RFC to perform light semi-skilled work with a wide range of environmental hazards which prevented him from performing past relevant work. He could occasionally (cumulatively 1/3 or less of an 8-hour day) lift and carry twenty pounds, and ten pounds frequently (cumulatively more than 1/3 up to 2/3 of an 8-hour day); stand and/or walk for about six hours; sit (with normal breaks) for about six hours; climb ramps or stairs frequently but never climb ladders, ropes, or scaffolds; stoop and crouch occasionally; and avoid unprotected heights and climb due to seizures. He had no limitations to push and/or pull, balance, kneel or crawl. He also had no manipulative, visual, or communicative limitations, but had environmental limitations (avoid industrial hazards and unprotected heights and climbs, and could not drive or use heavy machinery due to seizures). Tr. 187-196.

The claim was denied on September 17, 2013, with a finding that, despite his limitations, he retained the ability to perform tasks that required less physical and/or mental effort than required in his past jobs. Tr. 63, 210.

Otero requested reconsideration but did not submit additional medical reports. Tr. 67, 215. On February 18, 2014, Dr. Murari Bijpuria concurred with the light RFC assessment by Dr. Concepción. Tr. 201. The only additional limitation assessed at reconsideration was that he could

crawl occasionally and not unlimitedly. Tr. 203. The initial determination of not disabled was affirmed and the claim was denied upon reconsideration on February 20, 2014. Tr. 67, 214-215.

Otero then claimed on June 2014 that his health issues had deteriorated; he felt strong and constant pain in his back which limited his ability to do physical activity. He could not remain in one position, felt numbness in his lower back, felt strong joint pain, could not walk or drive long distances, and could not perform maintenance in his car, yard, or home. Tr. 367-369.

At Otero's request (Tr. 220-222), a hearing before an ALJ was held on June 10, 2016. Tr. 14, 34-52. A vocational expert ("VE") (Dr. Héctor Guerra)(Tr. 373-374), and Otero testified. Otero's attorney requested at the hearing for a consultative examination (Tr. 37), which the ALJ denied with a finding that the medical evidence of record sufficiently established Otero's impairments to determine RFC. Tr. 14, 51.

Otero testified that he could not work because he has had epilepsy since age 14, and the daily medication for the condition, which he timely took, made him sleepy and slow. His last epileptic attack was on December 19, 2012 because he forgot to take the pill. Tr. 38. For twelve years, Otero used to work distributing bottled water, and had to lift four-gallon boxes, water coolers, and five-gallon jugs. He stopped working when he had his 2012 epileptic attack (which occurred at home) because his doctors told him due to the fractured vertebrae and herniated discs he could not lift heavy things any longer. Tr. 42-45. He now helped out at his father's fruit and vegetable stall with bookkeeping. Sometimes he worked from home and other times on location. He drove five days a week about seven and a half miles for about a total of six hours per day. Otero also helped his children with school. Tr. 39-40.

Otero further testified that he sometimes suffered from back and hip pain, depending on the weather. Tr. 45. The pain normally started at the hip and radiated towards the left hip, rarely down the leg. He could stand comfortably for about 20 to 25 minutes. Tr. 46. He could sit comfortably for 15 to 20 minutes, and shifted position to avoid discomfort. Otero alternated between sitting and standing. He could also bend and twist with caution. When he hurt himself from doing these movements, it took him around two days to recover. He could occasionally lift more than 20 pounds but avoided it to not hurt himself. Tr. 47. The gallons of water he used to lift at his old job weighed around 50 pounds. Tr. 49. He felt more comfortable lying down. Tr. 48.

The VE testified that Otero's previous job as a small business owner delivering bottled water is classified as having a light physical exertion level but was actually a medium physical

exertion level as Otero performed it. Tr. 49. The ALJ asked the VE whether a person with Otero's same age and vocation profile, who could perform light physical exertion but with the following postural limitations, could perform past work: occasionally stoop, bend, crouch, and crawl; frequently climb stairs and ramps; never climb ladders, ropes, and scaffolds; could never be in unprotected heights, or near cutting or dangerous instruments, or near moving mechanical parts; and could not drive. The VE answered that Otero could not perform past relevant work because he could not drive a motor vehicle, which he needed to do in his delivery service. The VE further testified that there were other light jobs that such a person could perform in Puerto Rico or in the nation, such as liquor inspector, sifter, and ampule filler. Tr. 50.

Counsel for Otero asked the VE if a claimant who had to alternate positions between sitting and standing every 20 minutes could perform the alternate jobs. The VE answered that such a person could not. Tr. 51.

On August 1, 2016, the ALJ found that Otero was not disabled under sections 216(i) and 223(d) of the Act. Tr. 14-21. The ALJ sequentially found that Otero:

(1) had not engaged in substantial gainful activity since his alleged onset date of December 19, 2012 through his date last insured (Tr. 16);

(2) had severe impairments: epilepsy, lumbar degenerative disc disease, and obesity (Tr. 16);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)[3] (Tr. 17);

(4) could not perform past relevant work (which was light work)[4] (Tr. 20) but retained the RFC to perform light work with the following limitations: occasionally stoop, kneel, crouch, and crawl; frequently climb stairs and ramps but never climb ladders, ropes, or scaffolds; never be

---

[3] The ALJ considered Social Security Listing 1.04 (spine disorders), and Listings 11.02 and 11.03 (epilepsy). Tr. 17.

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, walking or standing up to six hours of an eight-hour workday, and some pushing or pulling. Light work includes sedentary work, or work that requires lifting no more than ten pounds at a time, sitting for at least six hours out of an eight-hour work day, occasional walking and standing for no more than about two hours a day, and good use of the hands and fingers for repetitive hand-finger actions. 20 C.F.R. § 404.1567(a) & (b); SSR 83-10.

exposed to moving machinery, unprotected heights, or cutting devices; and never operate motor vehicles (Tr. 17); and

(5) as per his age, education, work experience, and RFC, there were unskilled light jobs that existed in significant numbers in the national economy that Otero could perform (such as liquor inspector, sifter, and ampoule filler). Tr. 21.

The ALJ stated Otero's conditions could reasonably be expected to cause his alleged symptoms but that his statements concerning intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, such as his own testimony. The ALJ considered Otero's obesity under SSR 02-1p for the RFC assessment, which provides that obesity can cause function limitations. The ALJ gave little weight to Dr. Hernández's opinion because it was not supported by his own treatment notes and clinical findings, Otero's testimony, and the overall record. Little weight was also afforded to Dr. Alverio's opinion that Otero needed to avoid lifting heavy objects because Dr. Alverio did not provide a function-by-function assessment of Otero's carrying limitation. The ALJ gave partial weight to the State agency medical consultants' assessment, finding that Otero had greater postural and environmental limitations which the consultants did not consider. Tr. 18-19.

Otero requested review of the ALJ's decision, and claims to have submitted additional evidence. Tr. 287. However, the Appeals Council denied his request on September 20, 2018, finding no reason to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. The present complaint followed. Dkt. No. 1.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process that based on Otero's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act. Here, the ALJ determined that through the date last insured, and based on the record evidence, Otero could not perform past relevant work but retained the RFC to perform light work with the following limitations: occasionally stoop, kneel, crouch, and crawl; frequently climb stairs and ramps but never climb ladders, ropes, or scaffolds; never be exposed to moving machinery, unprotected heights, or cutting devices; and never operate motor vehicles. A review of the hearing transcript shows that this RFC finding was used by the ALJ to pose the hypothetical question to the VE.

Otero first contends that the Appeals Council erred when it refused to review the ALJ's decision despite having received additional pertinent medical evidence. Dkt. 12, p. 3. This argument is unavailing for several reasons. First, Otero is vague about what the "additional pertinent medical evidence which supported the plaintiff's complaints since before the decision" actually contains. *Id.* In the record received by this court[5] and in Otero's brief, there is no indication that additional medical evidence was submitted, much less what that evidence said. Therefore, this court cannot determine if this additional evidence casts doubt on whether or not the ALJ's decision was ultimately supported by substantial evidence.

Second, the Appeals Council "need not and often does not give reasons" for its decision not to review a case. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). Further, the council has broad latitude in deciding which cases will be reviewed. *Id.* (quoting 20 C.F.R. § 416.1470). I note that the "Notice of Appeals Council Action" indicates that "[u]nder our rules we will review your case for any of the following reasons: … We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier." Tr. 1-2, 29-30. In this case, the Council's ultimate decision consisted of a simple statement that they decided not to review the ALJ's ruling. Tr. 1. This statement does not indicate what evidence the Council did or did not consider, nor does it indicate disregard of any evidence it was obliged to consider.

Otero also argues that failure to consider this evidence leaves an "unadjudicated period" between the ALJ's decision (August 1, 2016) and Otero's date last insured (December 31, 2017). Dkt. No. 12, p. 4. Agency policy provides that the Appeals Council only considers additional evidence that relates to the period on or before the date of the hearing decision, if there is reasonable probability that the additional evidence would change the outcome of the decision and if it is accompanied by an explanation showing good cause for not submitting it prior to the hearing. 20 C.F.R. § 404.970(a)(5) & (b). The record contains no such evidence or explanation. Therefore,

---

[5] The transcript at Tr. 5 contains an order from the Appeals Council acknowledging that "[t]he Appeals council has received additional evidence," consisting of the receipt of a three-page request for review by Otero's counsel, labeled Exhibit 15B. In the transcript received by this court, Exhibit 15B contains a one-page request for review of hearing. *See* Tr. 287.

this court finds that the Appeals Council adequately considered all of the evidence that it was required to and did not err in deciding not to review the ALJ's determination.

Otero next argues that the ALJ's conclusion that he is not disabled is not based on substantial evidence in the record because the ALJ: (1) did not take into account the vocational factors (age, education, work experience and impairments) (Dkt. No. 1, p. 3), (2) failed to consider his need for frequent position changes and the effects of pain in the RFC assessment (particularly after the VE testified that no work was available with those limitations), (3) gave more weight to the non-examining physicians than to the treating physicians, and (4) improperly substituted his own opinion for those of the medical experts. The record contains medical evidence of four treating sources (Dr. Alverio, Dr. Hernández, Dr. Cerezo, and Ashford Presbyterian Community Hospital) and two non-examining consultants (Dr. Concepción and Dr. Bijpuria), as well as Otero's own testimony. Otero's arguments are unavailing as the medical opinions and self-reported symptoms in the record support the ALJ's findings that Otero could perform light work with certain limitations. Dkt. No. 12, p. 2-5.

It was the ALJ's duty to weigh all of the evidence and make certain that the ALJ's conclusion rested upon clinical examinations as well as medical opinions. *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 28, 224 (1st Cir. 1981). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* The ALJ is also required to express a claimant's impairments in terms of work-related functions, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1).

The ALJ assessed that Otero could perform light work, with occasional stooping, kneeling, crouching, and crawling; frequent climbing stairs and ramps but no climbing ladders, ropes, or scaffolds; no exposure to machinery, unprotected heights, or cutting devices; and no operating motor vehicles. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, walking or standing up to six hours of an eight-hour

workday, and some pushing or pulling. Light work includes sedentary work, or work that requires lifting no more than ten pounds at a time, sitting for at least six hours out of an eight-hour work day, occasional walking and standing for no more than about two hours a day, and good use of the hands and fingers for repetitive hand-finger actions. 20 C.F.R. § 404.1567(a) & (b); SSR 83-10. This RFC assessment was incorporated into the hypothetical question he posed to the VE.

Evidence from the four treating sources shows that Otero's epileptic condition and low back pain were effectively controlled with medications, which allowed him to work even with the conditions. His failure to take his medication in 2012 which provoked a seizure episode also evidences the effectiveness of his medications, as the treating sources continued to prescribe the same medication. Prior to that, he suffered two other episodes, as shown in Dr. Hernández's record. The ALJ recognized the epileptic conditions and the medication's side effects of drowsiness when incorporating the environmental and postural limitations into the RFC assessment. *See* Tr. 18.

The ALJ also considered Otero's obesity based on his weight and height, and his lumbar pain. *See* Tr. 18-19. The record shows that the ALJ incorporated into the RFC assessment Otero's limitations in exertional functions. The ALJ noted at Tr. 18 that the record showed that Otero had no neurological deficits, and instead had normal sensation, full muscle strength, and normal and symmetrical deep tendon reflexes (as found documented in Dr. Alverio's and Dr. Hernández's medical records). Dr. Alverio's notes show that Otero had normal sensation, full muscle strength and normal reflexes. Dr. Alverio's recommendation to Otero that he avoid carrying heavy objects (as Otero used to do when he lifted 50 pounds in his prior job delivering bottled water) fits the ALJ's RFC assessment that Otero could do light work, which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. Dr. Hernández's record adds that Otero had full strength in his extremities, full hand function, no muscle atrophy, no motor and sensorial abnormality, and normal reflexes. Light work includes good use of the hands and fingers for repetitive hand-finger actions, and the evidence shows that Otero had no limitations using his hands. Dr. Hernández assessed that Otero could lift and carry up to 15 pounds; sit, stand, and walk for 30 minutes at a time; and needed assistance to perform activities of daily living; but that determination is reserved to the Commissioner. The ALJ also noted that Otero's pain was conservatively treated with medications, with no required extraordinary measures such as surgery been recommended.

One of the most telling pieces of evidence in this record is Otero's own testimony at the hearing (Tr. 39-49) and self-reported daily activities. When asked at the hearing how he spends his days, Otero testified that he helps his father at a fruit and vegetable stall by doing bookkeeping. I note that one of the follow-up question was "[b]ut your work, your tasks, do you do them at home or outside the home?" Tr. 39. In referencing performance of work or tasks, it may be concluded that Otero is capable of working, and was in fact working for his father. Otero also admitted to being able to occasionally lift more than 20 pounds (light work requires occasionally lifting 20 pounds), but avoided doing so to not hurt himself. Otero also testified that he could drive seven and a half miles or about six hours total a day; could sit comfortably for 15 to 20 minutes and then needed to shift positions to avoid discomfort; could stand comfortably for about 20 to 25 minutes; and alternated between sitting and standing. Tr. 46-48. Even if Otero were limited in his ability to perform light work, Otero alternated between sitting and standing, and sedentary work does not require that a person be seated for six unbroken hours without shifting position during an 8-hour workday. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

As to Otero's claims that the ALJ gave less weight to the treating sources' records, the regulations require an ALJ to carefully consider a medical source's opinion about any issue. SSR 96-5p, 1996 SSR LEXIS 2.[6] Also, when determining which work-related limitations to include in the hypothetical question, the ALJ must: (1) weigh the credibility of a claimant's subjective complaints, and (2) determine what weight to assign the medical opinions and assessment of record. *See* 20 C.F.R. §§ 404.1527, 404.1529. The ALJ should give "*more* weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2).

The ALJ summarized the medical evidence and self-reported symptoms, and then assigned the following weights. The ALJ found that Otero's conditions could reasonably be expected to cause the reported symptoms but Otero's statements about their intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other evidence in the record, including his own testimony. The opinion of a treating physician is presumed to carry controlling

---

[6] The SSA recently revised the rules for evaluation of the medical evidence, and the final rules became effective on March 27, 2017 (*see* 82 FR 5844), thus rescinding SSR 96-2p, SSR 96-5p, SSR 96-6p, SSR 06-03p effective on that date. Therefore, in this case, the treating physician rule applies.

weight as long as it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.*; SSR 96-2p, 1996 SSR LEXIS 9. The ALJ gave little weight to Dr. Hernández's opinion that Otero could lift and carry up to 15 pounds; sit, stand, and walk for 30 minutes at a time; and needed assistance to perform activities of daily living, finding that his opinion was inconsistent with the substantial evidence contained in the medical record, including his own treatment notes and clinical findings (which is a valid reason to discount a medical assessment), and Otero's testimony. In addition, that determination was reserved to the Commissioner. The ALJ also gave little weight to Dr. Alverio's opinion about avoiding heavy lifting because Dr. Alverio did not provide a function-by-function assessment. The ALJ did not comment on Dr. Cerezo's record, but stated that he considered the evidence of record as a whole in the RFC assessment. The ALJ afforded partial weight to the State Agency consultants, finding that they did not adequately consider Otero's postural and environmental limitations. Tr. 18-19.

Once the ALJ decides what weight to give a treating source, under the "good reasons" requirement, he is required to include in the notice of determination "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence or is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Arias v. Comm'r Soc. Sec'y*, 70 F. App'x 595, 598 (1st Cir. 2003). The ALJ's decision contains a summary of the treating and consultative opinions the ALJ considered, and a specific statement of the reasoning behind the weight assigned, which I find was sufficient to give the court notice of the weight given to the medical opinions. I do not find that the ALJ substituted his own opinion for those of the medical experts, but made a series of informed decisions in weighing the medical evidence before him. The medical opinions, as discussed above, supported the conclusion that Otero could perform light work. The evidence in the record is certainly more than a "mere scintilla" with which a reasonable mind could, and did, accept as adequate grounds for the denial of social security benefits. *Visiting Nurse*, 447 F.3d at 72.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at

769 (citing *Rodríguez*, 647 F.2d at 222); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of March, 2020.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge